IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VEEDER-ROOT COMPANY,  )<br>a subsidiary of Danaher Corporation,  )<br>  )<br>Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>LOCAL 6521, UNITED STEEL, PAPER  )<br>and FORESTRY, RUBBER,  )<br>MANUFACTURING, ENERGY, ALLIED  )<br>INDUSTRIAL and SERVICE WORKERS  )<br>INTERNATIONAL UNION  )<br>  )<br>Defendant.  ) | CIVIL ACTION NO. 3:2005-409<br><br>JUDGE GIBSON |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### I. SYNOPSIS[1]

This labor arbitration matter was presented to this Court by the Plaintiff/Movant Veeder-Root Company's ("the Company") Complaint/Motion to Vacate The Arbitration Award Of September 27, 2005 (Document No. 1) and is presently before this Court on the Company's Motion for Summary Judgment (Document Nos. 11/15)[2] and on Defendant United Steelworkers of America, AFL-CIO-CLC,

---

[1] As the parties do not appear to dispute the underlying facts of this matter and because they have not submitted proposed statements of material facts and/or objected to or taken issue with the facts as described by Arbitrator Guyton, this Opinion is based upon the facts set forth in the September 27, 2005 Arbitration Award. The following Synopsis is included for the convenience of the parties and the Court and is not intended to be read as the Court's statement of undisputed facts of the case pursuant to local Rule 56.1. The parties have agreed to submit this matter on briefs in order to focus upon the present legal issue and are in agreement as to the facts concerning this appeal of an arbitration award. Plaintiff'sBrief in Support (Document No. 12), ¶ 7.

[2] Although originally filed at Document No. 11, the Plaintiff's Motion for Summary Judgment was re-filed at Document No. 15 using an errata event after Document No. 11 failed to contain a signature of the filing attorney.

Local 6521's (the "Union") Motion for Summary Judgment (Document No. 13). This Court has jurisdiction pursuant to the Federal Arbitration Act, 9 U.S.C. § 10, and the Labor Management Relations Act, 29 U.S.C. § 185(a). Venue is proper under 28 U.S.C. 1391(b).

By way of background, the Company is a private employer with a plant located in Altoona, Pennsylvania where it manufactures mechanical and electronic meters for petroleum distribution equipment, underground tank gauging and monitoring equipment and submersible pumps for petroleum products. At its Altoona plant, the Company employs approximately 180 Bargaining Unit employees who are members of the Union. The terms and conditions of their employment are governed by the Collective Bargaining Agreement ("CBA") entered into between the Company and the Union.[3]

Article XI, Paragraph 11.00 of the CBA affords the Company the right to "establish production quality standards for employee performance, including allowances, under any accepted method or procedure in industrial engineering practices, and to make, at any time, motion, time or methods studies required for the efficient operation of its business." Further, section 11.06 of the CBA provides:

> Direct labor production standards shall be arbitrated by the submission of the disputed standard by the parties to an impartial Arbitrator qualified in industrial engineering practices. Such Arbitrator shall, without formal hearing, establish a fair and equitable standard based upon the provisions of the Agreement, relevant and material standards data made available to him, and his observation of the job, and the parties shall be bound by his decision.

In April 2004, the Company conducted time studies of the assembly of its magnetostrictive

---

[3]The CBA at issue became effective on February 1, 2003 and expired on January 31, 2007.

probe (which includes the Company's mag plus probe and standard mag probe) for purposes of establishing a new production quality standard.[4] Prior to the 2004 time studies, the established rate for assembly of this product was 3.5 pieces/hour. Based upon the results of its time studies, the Company changed the production rate to 5.0 pieces/hour. The Union filed grievances protesting the new rate and the dispute went to arbitration.

The Company and the Union jointly selected Arbitrator Jackson W. Guyton to hear the matter. The parties stipulated and agreed that the issue to be determined by the Arbitrator was as follows: "[W]hether or not the standard established and set by the Company is fair and reasonable, or whether it is not reasonable in accordance with the provisions of the Labor Agreement." Supplemental Brief in Support (Document No. 12-6 (Exhibit D)), p. 4. On September 27, 2005, Arbitrator Guyton, after considering the language of the CBA and receiving testimony and documentary evidence from both the Company and the Union regarding their respective time studies and the assembly of the product(s) at issue, but without observing the assembly of the product(s), sustained the grievances, finding that the 5.0 pieces/hour standard for the assembly of the standard probe and mag plus probe is not fair and reasonable in accordance with the provisions of the CBA. He did not, in his determination, establish a new standard. Subsequently, on October 25, 2005, the Company sought relief from this Court requesting that the Arbitration Award be vacated.

---

[4]The magnetostrictive probe is used in underground storage tanks to provide information on fluid levels and water concentrations within the tank.

3

## II. STANDARD OF REVIEW

The law in this Circuit is well settled that a court's standard of review of a labor arbitration award is narrow. *See Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 360 (3d Cir. 1993) ("[a]s a general rule, we must enforce an arbitration award if it was based on an 'arguable' interpretation and/or application of the collective bargaining agreement, and may only vacate it if there is no support in the record for its determination or if it reflects a 'manifest disregard of the agreement, totally unsupported by principles of contract construction....'" )(citing *News America Publications, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)); *see also Government of Virgin Islands v. United Indus. Workers, N.A*, 169 F.3d 172, 176 (3d Cir.1999) (as the FAA mandates that federal courts not review substantive decisions of arbitrators, review of arbitration decisions is severely restricted and limited to, among other things, fraud, impartiality, or lack of jurisdiction). We do not review for legal error, but are limited to assessing whether the award "draw[s] its essence from the collective bargaining agreement." *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996)(citing *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298, 306-307 (1983)). The "essence" standard is liberal and is satisfied if the award can "in any rational way be derived from the agreement, viewed in the light of its language, its context and any other indicia of the parties' intention." *Exxon Shipping Co.*, 73 F.3d at 1295 (citations omitted).

We now turn to applying these principles to the matter *sub judice*.

### III.    APPLICATION OF THE STANDARD

The Company contends that the Award at issue does not meet the "essence" test because the Arbitrator failed to observe the job and, more importantly, failed to establish a fair and equitable standard as required by the language of section 11.06 of the CBA (Document No. 1, ¶¶11, 13). This Court agrees.

In his decision, Arbitrator Guyton discusses the pertinent language of the CBA as it relates to the Company's rights to establish production and quality standards; the analyses, methodologies, and data used by the time study engineers for the Company and the Union; testimony and documentary evidence relating to the assembly of the product(s) at issue; the time study cases/opinions submitted by the parties; and his own prior experience as an industrial engineer with regard to time studies/incentive standards. He does not, and cannot, discuss his own impressions of the assembly of the product(s) because he did not observe the job, despite the clear language of the CBA requiring him to do so.

The Arbitrator, without the benefit of having observed the job at issue, concluded that the time study performed by the Company was flawed for numerous reasons. First, the Arbitrator opined that the Company's time study engineer collected insufficient data. To that end, he comments that the Company time study engineer studied only 3 operators, for 55 minutes each, for less than 3 hours total time while, in his experience, operations were studied for at least a week, around the clock , for full eight hour shifts (Document 1, Exhibit B, ps. 9-10). He also notes that in the Lawrence Paper Case, submitted by the Company, the time study engineer conducted in excess of 50 time studies, the majority of which lasted for a shift (Document 1, Exhibit B, p. 9). Another error pointed out by the Arbitrator was the Company's failure to provide any allowance for "unavoidable delay" in developing the 5.0

5

pieces/hour standard. The Arbitrator remarked that when he worked as a time study engineer, he "always included an unavoidable delay allowance in the development of the standards" (Document 1, Exhibit B, p. 10). Third, the Arbitrator takes issue with the fact that the Company applied the 5.0 pieces/hour standard to both the standard probe and the mag plus probe despite the considerable evidence that assembling the standard probe took more time than the mag plus probe (Document 1, Exhibit B, p. 8).

Additionally, the Arbitrator considered evidence regarding the maintenance of the employees' prior earnings in reviewing the Company's 5.0 production standard as there is "an abundance of arbitral authority" which holds that incentive employees should be able to earn as much under the new operation as under the old one. In this regard, the Union witnesses who testified, all of whom were assembly area veterans with good performance records, indicated that they had difficulty attaining the new standard.

Finally, the Arbitrator used the Company's production data from January 12 and 13, 2005 to calculate a standard of 4.13 pieces/hour. Significantly, and as the Company points out, he did not rule that 4.13 pieces/hour is the correct standard. In fact, the Arbitrator did not establish any new standard.

Section 11.06 of the CBA set forth above mandates the one duty of the impartial arbitrator who is asked to examine direct labor production standards: "Such arbitrator shall, without formal hearing, establish a fair and equitable standard...." Sections 11.00, 11.01, 11.02, 11.03 of the CBA establish the procedures and guidelines for establishing new production standards and the Arbitrator recognized these sections, along with section 11.06 as the "**Applicable Provision[s] of the Labor Agreement.**" Sections 11.00, 11.01, 11.02, and 11.03 provide the bases for the Arbitrator to understand the company's calculation and establishment of a new standard as well as the recognition of the right of the

6

Union to grieve such a standard. They do not in any way modify the Arbitrator's duty to "establish a fair and equitable standard". It appears from the record that the Arbitrator proceeded with the understanding that the stipulation by the parties limited his express duties set forth in the CBA and that the full extent of his duties was to determine whether the standard set by the Company was "fair and reasonable." Had the Arbitrator concluded that the Company's new standard was "fair and reasonable", the new standard would remain in place and the Arbitrator's award would have complied with section 11.06 of the CBA in that he would have established a fair and equitable standard by adopting the Company's standard. However, the Arbitrator did not conclude the Company's new standard was "fair and reasonable" and in the wake of that conclusion, no fair and equitable standard was established in accordance with section 11.06 of the CBA.

In the absence of the establishment of a fair and equitable standard by the Arbitrator, the Court cannot conclude that the award draws it "essence" from the CBA. The CBA's language is clear, in that it uses "shall" as its command of the Arbitrator's duty. The Arbitrator may not avoid this duty by relying upon his interpretation of the language of a stipulation that he is relieved of the actions required of him set forth in the CBA. Even if the Court accepted the proposition that a stipulation is to be viewed as having supremacy over the CBA, this particular stipulation is inadequate in that regard in that the stipulation itself refers the Arbitrator back to the CBA by its use of the language "in accordance with the provisions of the Labor Agreement." Rather than relieving the Arbitrator of his clearly enumerated duty set forth in section 11.06, the stipulation specifically guides him back to the CBA.

The void left by the Arbitrator's award manifests a disregard for the mandate of Section 11.06. Furthermore, the Arbitrator was required to "establish a fair and equitable standard based upon the

provisions of the Agreement, relevant and material standards data made available to him, and his observation of the job...." The Arbitrator did not observe the job in question. The Court finds that his failure to observe the job alone would not merit overturning an award of the Arbitrator, but where the Arbitrator has not established a fair and equitable standard after finding the current standard to be unsuitable, the failure to observe the relevant job is certainly consistent with his failure to establish a standard. The Court cannot find any basis upon which to conclude that the Arbitrator's rejection of the Company's new standard without establishing a fair and equitable standard has any arguable basis in the CBA. If this was the manner in which the CBA's arbitration procedure for new standards was interpreted, the parties could continually remain in arbitration, with the Company continuing to set new standards with the hope that one would eventually be accepted by an arbitrator. The requirement that the standard be set forth by the Arbitrator permits the parties to achieve a fair and equitable standard while only having to arbitrate one time. Section 11.06 provides finality to the parties with regard to the issue of this particular labor standard while avoiding the time and expense of repetitive arbitration.

The Arbitrator held that the 5.0 pieces/hour standard was not fair and reasonable in accordance with the provisions of the CBA. The Arbitrator's failure to establish a fair and equitable standard is perhaps related to his view of the amount of data and time that should be involved in a proper and thorough time study and the fact that he performed his 4.13 pieces/hour calculation based upon data from less than 24 hours of production over the course of two days. Despite the time intensive study the Arbitrator envisions, this concern does not override his duty under the CBA to set forth "a fair and equitable standard."

As Arbitrator Guyton failed to "establish a fair and equitable standard," as explicitly required

8

by the CBA, his determination reflects a manifest disregard of the CBA and must be vacated.

An appropriate Order follows.

AND NOW, this 28th day of August, 2007, after consideration of the Plaintiff's Motion for Summary Judgment (Document Nos. 11/15) and the Defendant's Motion for Summary Judgment (Document No. 13) in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED that the Plaintiff's Motion is **GRANTED** and the Defendant's Motion is **DENIED,** and the September 27, 2005 Arbitrator Award is vacated.

BY THE COURT:

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**